Jones<br>*v.*<br>Andover.

63

————

## MARY WADSWORTH *versus* JOHN RUGGLES, Executor of Benjamin Wadsworth.

Where a testator bequeathed to his wife, " all rents in arrear on her real estates," memorandums written and signed by him were admitted in evidence, to show that he included in those terms, not merely rents unpaid by the tenants, but all the money he had ever received for rent, or otherwise, belonging to his wife, with interest

ASSUMPSIT for a legacy of 663 dollars and 66 cents.

The last will of the Rev. Benjamin Wadsworth, dated August 1, 1825, contained, among others, the following provisions. " *First.* Knowing the full determination of my beloved wife Mary, from her own frequent declarations, not to live in Danvers after my decease, I make no provision for her accommodation in my dwellinghouse. I give, devise, and bequeath to her, instead of dower, all my interest and title in and to any part of the real estates of her father and mother, late deceased, lying in Lynn, for her use for ever, with as much of the provisions in my house as she may wish for, not exceeding one third, at the time of my decease. I also give

---

[1] See *Jones* v. *Andover,* 9 Pick. 146; *Bigelow* v. *Weston,* 3 Pick. (2d ed.) 269, note 1

Wadsworth
v.
Ruggles.

my said wife 1000 dollars, to be paid to her in six months after my decease, and also the dividends accruing during her life on twenty shares in the New England Bank in Boston, and on twenty shares in the Commercial Bank in Salem. I also give my wife all the household furniture and other articles she brought me at and about the time of our marriage, in their present state."— "Seventhly, I bequeath to my said wife the money she may have in her possession at the time of my decease, and all rents in arrear on the real estates at Lynn."

The parties agreed, that the testator and the plaintiff were married in 1805, and that she was then in possession of certain real estate in her own right. The testator kept an account of the rent and income of this estate, and of the expenditures upon it, and from time to time made and signed memorandums relating to the same, which were kept in an envelope, on which was written by the testator, " Mrs. Wadsworth's papers," in a desk to which the plaintiff had free access ; and it was agreed, (if the Court should be of opinion that the same might be given in evidence,) that among the memorandums were the following, viz : —

One in which the testator, after reciting, that on June 23, 1808, an attorney at law had received of him two notes, one for 52 dollars and 69 cents, dated April 15, 1807, the other for 46 dollars and 85 cents, dated April 15, 1808, given to the testator by E. Curtis " for the rent of the place in Lynn," and that a suit had been commenced in the name of the attorney upon these notes, and execution obtained, but that only 15 dollars had been paid by Curtis, of which 7 dollars and 89 cents had been applied to the payment of costs, and the remaining 7 dollars and 11 cents had been paid to the testator, he adds, " which 7 dollars and 11 cents I have reckoned in my note to Mrs. Wadsworth, it being her property. And should any thing more ever be obtained of those two notes, I hereby testify that it belongs to Mrs. Wadsworth," &c.

Also a note given to the testator by Nathaniel Farrington, dated March 19, 1824, for 73 dollars and 84 cents, secured by a mortgage, and the following memorandum on the note.

Wadsworth

v.

Ruggles.

' This note with the mortgage I consider as Mrs. Wadsworth's, included in a clause of arrears in my last will. Attest, Benj. Wadsworth :" — which note and mortgage have been transferred to the plaintiff by the executor.

Also the following. " Oct. 11, 1825. Received 34 dollars and 10 cents of rent from Lynn, due to Mrs. Wadsworth, which are to be considered as offsets against Mr. Thacher's deed to me, which is given to Mrs. Wadsworth in my will, and therefore, I am not accountable to her for said sum. B. Wadsworth :" — meaning in the above to set off the 34 dollars and 10 cents, against a like sum of his own money advanced to purchase the estate devised to her.

Also the following. " Danvers, April 1, 1824. Memorandum. The sum of 663 dollars, 66 cents, includes all the money I have ever received for rent or otherwise belonging to my wife Mary Wadsworth, with interest reckoned annually upon the several payments which unitedly compose said sum to this date, except what I have at her request and for her sole benefit paid to purchase for her Mr. Moulton's bid, so called, and N. and F. Carnes's right in her late father and mother's real estate in Lynn. Benj. Wadsworth." And under this the following was written by the testator. " Memorandum. The above sum of 663 dollars, 66 cents, is included in my will." If in the opinion of the Court the time when the memorandum was made should be material, it was to be ascertained by a jury or by auditors, as the Court might direct.

The testator died on the 18th of January, 1826. He had made two or three other wills previously, and revoked the same. His real estate was appraised at 3800 dollars, and his personal at 24,172.

If the Court were of opinion that the sum demanded (663 dollars and 66 cents) was bequeathed by the seventh clause of the will, the plaintiff was to recover judgment for that sum with interest ; otherwise she was to become nonsuit.

The case was argued in writing.

*Saltonstall*, for the plaintiff. The question is, whether the sum of 663 dollars, 66 cents, mentioned in the memorandum, is included in the clause of *rents in arrear*, in the will.

It appears that the testator always kept an account with his

6 *

Wadsworth
v.
Ruggles.

wife, as he would have done with a stranger ; and that he included in *rents in arrear* not merely the rent due from the tenants at the time of his decease, (which was less than 20 dollars,) but Farrington's note, &c. given for rent. He states in the memorandum, that he had received the sum of 663 dollars and 66 cents, for rent and otherwise, and adds, " the above sum is included in my will." In what part of the will is it included ? We contend that the devise and bequest in the first clause are in lieu of dower, or if not wholly so, that the 1000 dollars and the income of the bank shares are from his own property, as a provision for her support. It was his intention to give the sum in question, under the clause of " rents in arrear," &c. and he meant to include all the money he had received from her estate. It was in fact all for rent, except about 10 dollars. That he did not confine the terms " rents in arrear " to their technical meaning, is evident from the memorandum respecting Farrington's note.

In the case of a will, evidence is admissible to apply its terms to the proper objects, as to show what is comprehended within the description of the estate devised. 3 Stark. Ev. 1695, 1013, note 1, 1026 ; 2 Roberts on Wills, (2d ed.) 18, 23, 27. Here the ambiguity arises from something extrinsic, and the admission of evidence is to explain the ambiguity and the intention of the testator. *Sargent* v. *Towne,* 10 Mass. R. 303, [Rand's ed. *p.* 307, note (a).]

*B. Merrill,* for the defendant. The rules of evidence laid down as to latent ambiguities, are not applicable in the present case. To create such an ambiguity there must be a doubt as to the sense, or some uncertainty as to the signification of the words. If there is no such doubt or uncertainty, parol evidence is inadmissible. The terms " rents in arrear," both in a popular and legal acceptation, have a known, certain, and definite meaning. They mean *rents behind — unpaid — due from tenant to landlord —* relative terms, which are applied without ordinary propriety or precision when used as relative to husband and wife. The evidence offered is not for the purpose of showing the meaning of the words *rents in arrear,* or rather the amount of *rents in arrear on those*

*estates unpaid by the tenant,* but to show that the testator intended to bequeath under those terms the 663 dollars, which were not rents in arrear. The admission of this testimony would be adding to the written language, by allowing us to say that a sum of money, the proceeds of *rents paid,* are *rents in arrear. Brown* v. *Selwin,* Cas. Temp. Talb. 240, 242, note ; *S. C.* 4 Bro. P. C. 180 ; *Ulrich* v. *Litchfield,* 2 Atk. 372 ; *Jackson* v. *Sill,* 11 Johns. Rep. 213, 215 ; Roberts on Fr. 15 ; 3 Campb. 57, Howe's note ; *Richards* v. *Dutch,* 8 Mass. Rep. 514 ; 3 Stark. Ev. 1008, 1010, 1011 ; [*Farrar* v. *Ayres,* 5 Pick. 409.]

Wadsworth
*v.*
Ruggles.

Even if the evidence offered by the plaintiff could be admitted, it would be inconsequential and barren. For, 1. it is vague, loose, and uncertain. 2. If the memorandums are regarded as testamentary papers, they are revoked by the will, being of prior date. 3. The plaintiff would contend, that the memorandum dated April 1, 1824, proves that the sum of 663 dollars is the sum bequeathed by the words " all rents in arrear on the estates in Lynn," when it cannot be overlooked, that the testator, in that memorandum, proceeds to describe that sum as including " all the money I have ever received for rent *or otherwise,* belonging to my wife M. W., with interest reckoned annually upon the several payments which *unitedly compose* said sum," &c. So that instead of proving that this sum is for rents in arrear, or for rents received, it proves the contrary. 4. The testator remarks, " the above sum of 663 dollars, 66 cents, is *included* in my will ;" the meaning of which is, that in his will he had bequeathed to the plaintiff a sum equivalent ; and it is immaterial whether these words were written by him before or after making his will of August 1, 1825 ; if written since, his meaning was, that the legacy of 1000 dollars included all the moneys he had ever received for her. 5. These memorandums by the testator were obviously intended as calculations, mere chalk, to satisfy and explain to his wife the extent of her pecuniary claims on him before he made his will. By the will he reimbursed all.

67

The opinion of the Court was drawn up by

PARKER C. J. The clause in the will under which the

*April term*
1828

plaintiff claims 663 dollars and 66 cents as a legacy to her, is in the following words.—" Seventhly, I bequeath to my said wife the money she may have in her possession at the time of my decease, and all rents in arrear on the real estates at Lynn." If the Court can look dehors the will to ascertain what was intended by the testator by the words "all rents in arrear," &c. it would be very clear, by the memorandum on the envelope, indorsed "Mrs. Wadsworth's papers," dated April 1, 1824, that he intended to give the sum there specified as the proceeds of her real estate, the rent of which he had received ; for in an additional memorandum he says, " the above sum of 663 dollars and 66 cents is included in my will." There being no date to this latter memorandum, it is to be presumed that it was made after the will, and was occasioned by some provision respecting rents made therein ; and these words in the will, " all rents in arrear," &c. might reasonably be referred to the amount of rents of which the account is stated in the memorandum. And although the whole of the sum mentioned in the memorandum should not have been received by him specifically from rents, taking the will and the memorandum together, there could be no doubt he intended to give her that sum.

But it is insisted by the executor, that there is no ambiguity in the clause, and therefore we are not at liberty to seek for a construction dehors the will. *Rents in arrear on the real estates in Lynn*, are, it is said, perfectly definite words, and there being a trifling sum of rent due from the tenant, at the decease of the testator, it must be intended the clause related to that only. The position is true, and well supported by the authorities, that extrinsic matter is not to be resorted to, when the meaning of the testator can be come at in the will itself, or when the words used themselves constitute a legacy or devise, there being no uncertainty as to the person who is to take, or as to the thing bequeathed. We think, however, there is an ambiguity in the words used, which will justify an explanation by extrinsic matter, and particularly by the words used by the testator himself in memoranda written and signed by him. We are obliged to sup

pose, in justice to the character of the testator, that he intended, in the clause in question, a bounty to his wife out of property belonging to himself. We presume also, from the scrupulous management of his wife's property, that he believed that all rents unpaid at the time of his death, accruing from real estate belonging to her, by law survived to her, and became her sole property, without any gift from him. That such is the law in the case of leasehold estates belonging to the wife, unless the rent was secured by a lease made by the husband alone with the tenant, in which it was stipulated that the rent should be paid to him, is very clear. See Com. Dig. *Baron and Feme*, *F* 1, and the cases there cited ; also 1 Roper's Husband and Wife, 170, *et seq.* ; Chamber on Leases, 221 ; and it is quite likely Mr. Wadsworth supposed the law to be the same in regard to his interest in his wife's estate. By the bequest then of rents in arrear on the estate in Lynn, which was her property, he could not have intended rents unpaid by the tenant, for we ought not to suppose he made a pretence of giving to her, what he had reason to think was already hers. What then did he mean by rents in arrear ? He has himself explained it, and very satisfactorily. He had received rent during the coverture from her real estate. This he had a right to do, and to appropriate to his own use ; but he kept an exact account with his wife, meaning conscientiously to restore all which he thought belonged equitably to her, though legally to him, and this he intended to do by his last will, and this he did. He gives her all the money in her possession at the time of his decease, and all the rents in arrear on the real estates at Lynn. By rents in arrear he meant the sums he had received and kept an account of, as belonging equitably to his wife ; rent in arrear to her, which he had not paid her, but kept on hand for her ; and he further says, "the above sum is included in my will." How is it included, unless in the clause giving her the rents in arrear ? It is supposed by the defendant's counsel, that it is included in the legacy of 1000 dollars ; but on recurring to the clause giving that legacy, and the other provisions made for her out of his personal estate, it is manifest he considered all this an equiv-

Wadsworth
*v.*
Ruggles.

alent for the legal claims she might have for a sufficient provision in his real estate in the form of dower.

That the testator used the words " rents in arrear " in an untechnical and inartificial manner, is evident from the memorandum in relation to a note given by Nathaniel Farrington, March 19, 1824, secured by a mortgage. The memorandum is, " This note, with the mortgage, I consider as Mrs. Wadsworth's, included in a clause of arrears in my last will." There is no clause in the will which contains the word *arrears*, except the one under consideration, and it was necessary to look dehors the will to ascertain what was meant by the terms, *rents in arrear*, on this subject. The testator certainly meant that this note should go to his wife, and so the executor considered it, for he has delivered it to her. Why then should not the money which he kept an account of as accruing from rents, pass to her in the same clause, when he says, at the foot of the memorandum, " the above sum is included in my will " ?

If it be said, that the devise to her in the first clause of the will, of all his right and interest in the real estate of her father and mother, shows that he did not understand the rules of property, and therefore that he intended to give her only what was already hers, under the phrase *rents in arrear*, it is a sufficient answer, that he appears to have had some interest in that real estate, purchased of Thacher, which was the object of that devise. We are satisfied, therefore, that it is right to look into these memoranda, in order to find out the meaning of the terms *rents in arrear*, for the reasons above stated ; and that by those words he meant to give her the sum included in the memorandum, as the amount re ceived as rents on her estate.[1]

*Defendant defaulted.*

---

[1] See 2 Stark. Ev. (5th Am. ed ) 558 to 561 and note 1; 3 Harr. Dig 2205.